Modified.

29 C.C.P.A.(Patents)

## In re EWALD.

### Patent Appeal No. 4553.

Court of Customs and Patent Appeals.

June 1, 1942.

Cox, Moore & Olson, of Chicago, Ill., (Ballard Moore and Curtis F. Prangley, both of Chicago, Ill., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1, 2, 5, and 15 to 18, inclusive, in appellant's application for a patent for an alleged invention relating to a method of coring half pears, as defined in claims 1, 2, and 5, and to the product of such method, as defined in claims 15 to 18, inclusive.

Eleven process claims were allowed by the Primary Examiner.

Claims 1, 2, and 15 are illustrative of the appealed claims. They read:

"1. The method of coring half pears which comprises applying to the cut surface of the half pear a continuous cutting edge of a configuration conforming to the longitudinal configuration of the seed-containing and stem thread portions of the half pear, moving the cutting edge relative to the half pear along a semicircular path substantially about a stationary axis substantially coinciding with the stem axis of the half pear whereby simultaneously to sever the seed-containing portion and relatively tough stem threads from the meat of the pear and whereby to form a continuous channel of semicircular cross section in a direction transverse to the stem axis and coextensive in length with the seed-containing and stem thread portions of the half pear and substantially concentric with such stem axis.

"2. A method of coring half pears having a calyx, a core proper and a stem thread section extending from the core proper to the stem end, which comprises forming a *single continuous cut of varying depth from*

end to end of the half pear which is truly semicircular and which is formed substantially concentrically to the stem axis of the half pear whereby simultaneously to sever the calyx, the core proper and the stem thread section from the half pear with a cut of minimum width between the portion from which the calyx was removed and the portion from which the core proper was removed." (Italics ours.)

"15. A cored half pear having a single, continuous groove of varying longitudinal configuration and formed substantially concentrically with respect to the stem axis of the half pear, said groove being formed semi-cylindrical in cross section at every point along the stem axis of the half pear and extending substantially from end to end of the half pear, portions of said groove closely conforming in shape to the shape of the calyx, the core proper, and the stem thread sections of the uncored half pear, and said groove having a restricted portion or throat connecting the calyx conforming portion of the groove to the portion of the groove conforming to the core proper."

The references are:

Swett et al., 95,286, September 28, 1869;

Spencer et al., 1,769,654, July 1, 1930.

Appellant disclosed in his application an apparatus for carrying out the method defined in appealed claims 1, 2, and 5, and for producing, by his claimed method, the article defined in appealed claims 15 to 18, inclusive.

Both appellant's method and the article produced thereby are sufficiently defined in the quoted claims.

The patent to Swett et al. relates to an improved apple-corer, and discloses a hand-operated apple-corer comprising a rod, which is adapted to be pressed against the half-section of an apple, and a cutting knife attached to the rod. The blade of the knife has a curved portion intermediate its two ends and is designed, as stated by the patentees, to cut out the seed-lobe and the stem and the blossom end in one operation. The patentees state that in the operation of their device "the half apple is grasped in one hand and the corer in the other," and the corer is then placed "on the apple in such a position that the rod" to which the knife blade is attached "will be directly over the centre. Now if the rod be firmly pressed on to the apple, and at the same time revolved, the knife D E F will cut entirely around all parts of the core and thus remove it."

The patent to Spencer et al. relates to an invention for paring and coring half pears. According to the patentees' disclosure, half pears are placed in cups and the peel and core removed by knives shaped for that purpose.

Appealed claims 1, 2, and 5 were rejected by the Primary Examiner on the ground that each of the references anticipated the method defined by those claims. Claims 15 to 18, inclusive, were rejected by the examiner * * * as being for an article which does not come under any of the statutory classes of invention, not being for an art, machine, manufacture or composition of matter, nor for any new and useful improvement thereof.

\* \* \* \* \*

"A half pear with its core, stem, and calyx removed is still a natural pear and not a manufacture, the result of invention."

In support of his views, the examiner cited the case of American Fruit Growers, Inc., v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801.

In affirming the decision of the Primary Examiner, the Board of Appeals stated that the patent to Swett et al. " * * * discloses an apple-corer which makes a cut extending the full length of the half fruit. It makes a cut which is substantially semicircular in cross section at all points of the core axis. The drawing shows the bar BC, which is described as being rounded, *initially positioned at one side of the core axis. In making the cut it rolls over to the other side of the core axis, so the cut is not displaced as illustrated in Sheet 1 of the drawings accompanying the applicant's brief.* No part of the cut has greater width than that part between the blossom end and the core proper. The method is not patentably different because it is performed on a half pear, instead of on a half apple as in the patent. These three claims [Nos. 1, 2, and 5] are considered not allowable over this patent." (Italics ours.)

The board also held that appealed claims 1 and 5 were substantially anticipated by the patent to Spencer et al. Apparently in answer to the contention of counsel for appellant that the patent to Spencer et al. did not disclose an operative structure or one which could be made operative by one possessing ordinary mechanical skill, the board said: "It is true the knife blade 41 should be below instead of above the axis

of rotation when viewed as shown in Fig. 9 of the patent. Otherwise, it could not make the cut attributed to it in the patent. One making the cutter of the patent would certainly so position the blade 41 with respect to the axis of rotation that it would make the cut described in the patent." The board also held that as claims 15 to 18, inclusive, defined a cored half pear which "is still in its natural state," the examiner was right in rejecting them as not being for patentable subject matter.

On January 29, 1942, subsequent to the oral arguments in this court, counsel for appellant submitted to the court the following typewritten statement: "On behalf of appellant, it is conceded that Claims 1 and 5 read on the patent to Spencer et al. No. 1,769,654 and are anticipated by said patent, if the device, as disclosed therein, is operative, or, although inoperative, can be made operative by one of ordinary skill in the art."

Counsel for appellant here contend that the apparatus disclosed in the patent to Spencer et al. is inoperative; that it could not be made operative without the exercise of more than mechanical skill; and that, therefore, that patent is not a proper reference. Counsel have explained in considerable detail why they think the Spencer et al. apparatus is not operative.

The Board of Appeals, however, was of opinion, as stated in the quoted excerpt from its decision, that the inoperative feature of the Spencer et al. apparatus could be made operative by the exercise of ordinary mechanical skill.

■■■ No evidence was introduced by counsel for appellant for the purpose of establishing that the Spencer et al. apparatus was inoperative and that the alleged inoperative features could not be made operative by one having ordinary mechanical skill. We are unable to hold, therefore, that the board erred in concluding that the defect in the Spencer et al. apparatus, which it found existed, could be corrected by one having ordinary mechanical skill, and that the Spencer et al. patent was a proper reference. In view of the concession made here by counsel for appellant, we must hold that claims 1 and 5 are unpatentable over the patent to Spencer et al.

■■■ As hereinbefore noted, appealed claims 15 to 18, inclusive, were rejected by the tribunals of the Patent Office on the ground that they do not define "any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof," within the purview of section 4886 of the Revised Statutes, U.S.C. title 35, sec. 31, 35 U.S.C.A. § 31.

Claims 15 to 18, inclusive, call for a cored half pear having a continuous groove or channel of varying longitudinal configuration, etc. Stated differently, those claims call for a cored half pear in which the groove or channel, formed by the removal of the core, conforms substantially to the shape of the core prior to its removal.

A cored half pear is merely a half pear with the inedible portion thereof removed. It, obviously, is not a new and different article, having a new name, character, or use. See Hartranft v. Wiegmann, 121 U. S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012; Anheuser-Busch Brewing Association v. United States, 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336; Ishimitsu v. United States, 11 Cust.App. 186; Kleinberger & Katz v. United States, 12 Cust.App. 571; American Fruit Growers, Inc., v. Brogdex Co., supra.

We agree with the views expressed by the tribunals of the Patent Office that claims 15 to 18, inclusive, do not define patentable subject matter.

Relative to appealed claim 2, the Board of Appeals held that the method defined therein was anticipated by the patent to Swett et al. In so holding, the board stated, as hereinbefore noted, that the rod in the Swett et al. patent to which the knife blade is attached is "initially positioned at one side of the core axis"; that in operating the Swett et al. device the rod "rolls over to the other side of the core axis"; and that by so operating that device, the method defined in claim 2 was carried out.

Counsel for appellant point out in their brief that it is stated in the specification in the Swett et al. patent that the "corer" is so positioned that the rod is "directly over the center" of the half-section of the apple instead of at one side of the center, as stated in the board's decision. Counsel for appellant agree, however, with the views expressed by the board that the rod to which the blade is attached "does not remain stationary relative to the stem axis of the

apple during the coring operation, but shifts laterally [as held by the board] across the surface of the apple as the handle is turned." Counsel contend, however, that as the rod is shifted laterally across the surface of the apple during the coring operation, such operation does not, as held by the board, form a "'single continuous cut * * *', which is 'truly semicircular' and which is formed 'substantially concentrically to the stem axis' of the half fruit, as set forth in claim 2"; that, therefore, the cut is not uniform with relation to the stem axis of the fruit; and that, as a result, "a considerable portion of the edible flesh of the fruit" is wasted.

We are in agreement with counsel for appellant that the board was in error in stating that the rod disclosed in the patent to Swett et al. is "initially positioned [during the coring operation] at one side of the core axis." As hereinbefore noted, it is stated in the patent that the corer is placed on the apple in such a position that the rod "will be directly over the centre" of the half-section of the apple. Furthermore, we are unable to agree with the board's holding, in which counsel for appellant concur, that, in the operation of the Swett et al. device, as taught by the patentees, the rod "rolls over to the other side of the core axis," as stated by the board, or that it "shifts laterally across the surface of the apple as the handle is turned," as argued by counsel for appellant. The patentees expressly state, as contended by the Solicitor for the Patent Office, that the rod is "revolved," not moved laterally across the surface of the apple. Accordingly, if the teaching of the patentees is followed, and the rod of their device is positioned directly over the center of the half-section of an apple and "revolved," the blade will cut entirely around all parts of the core and thus remove it. By such an operation, there will be a "single continuous cut of varying depth from end to end" which "is truly semicircular and which is formed substantially concentrically to the stem axis of" the half-section of the fruit.

■ The only difference between the Swett et al. disclosure and the method defined in appealed claim 2 is that the latter relates to the coring of half pears, whereas the Swett et al. patent relates to the coring of half-sections of apples. It would seem to be clear, therefore, that appealed claim 2 is not patentable over the disclosure in the Swett et al. patent.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.